IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| MONIQUE DE BOER and NICK CARPENTER in their capacities as the COLLECTION COMMITTEE OF THE SOUTHERN OREGON IBEW-NECA ELECTRICAL WORKERS AUDIT COMMITTEE, in their collective capacities as fiduciaries and/or designated collection agents for the: CASCADE PENSION TRUST; HARRISON ELECTRICAL WORKERS TRUST FUND; CRATER LAKE ELECTRICAL JOINT APPRENTICESHIP AND TRAINING TRUST FUND; LOCAL 659 LABOR MANAGEMENT COOPERATION FUND; NECA-IBEW NATIONAL LABOR-MANAGEMENT COOPERATION FUND; ELECTRICAL INDUSTRY ADMINISTRATIVE MAINTENANCE FUND OF THE OREGON-PACIFIC-CASCADE CHAPTER, NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION; INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 659; OREGON-PACIFIC-CASCADE CHAPTER, NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION, | Civ. No. 6:22-cv-00203-AA |
| Plaintiffs, | **OPINION & ORDER** |
| v. | |
| DANIEL LEE NAWMAN, dba DAN'S ELECTRIC, | |
| Defendant. | |

AIKEN, District Judge.

This case comes before the Court on Plaintiffs' Motion for Default Judgment, ECF No. 15, and Plaintiffs' Motion for Attorney Fees and Costs, ECF No. 16. Defendant has not appeared in this matter and, at Plaintiffs' request, a Clerk's Entry of Default was entered in this matter on August 10, 2022. ECF No. 21. This matter is appropriate for resolution without oral argument. For the reasons set for the below, Plaintiffs' Motions are GRANTED.

## DISCUSSION

Plaintiffs in this case bring a claim under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132 alleging that Defendant failed to timely file employee benefit contributions under the terms of the collective bargaining agreement ("CBA") in violation of 29 U.S.C. § 1145. Compl. ¶¶ 8-9. Plaintiffs allege that Defendant is also required to remit payments to Plaintiffs to provide benefits under the agreements for covered employee and to make available Defendant's books for audit by Plaintiffs. *Id.* at ¶ 10. Defendant has failed to do so. *Id.* Plaintiffs allege that employees of Defendant performed work for which reports were due or payments required during each of the months for which Plaintiffs have demanded an audit and contributions are owed to Plaintiffs by Defendant. *Id.* at ¶ 11.

Plaintiffs move for entry of default judgment pursuant to Federal Rule of Civil Procedure 55(b) for unfunded contributions in the amount of $6,003.32 for unreported work performed in calendar year 2018; interest on delinquent

contributions; liquidated damages; the cost of the payroll audit of Defendant; and Plaintiffs' reasonable attorney fees, expenses and costs and disbursements incurred.

Entry of default is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Before the Court decides whether to grant default judgment, Rule 55(b)(2) requires the Clerk's entry of default. However, entry of a default does not automatically entitle plaintiff to a court-ordered judgment. *See Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986). A district court has discretion in deciding whether to enter a default judgment. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

In exercising this discretion, the court may consider a number of factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring a decision on the merits. *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Additionally, when a party seeks entry of default judgment, courts have a duty to examine their own jurisdiction, both subject matter and personal. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

Here, the Court has jurisdiction over this matter under Sections 502 and 515 of the Employment Retirement Income Security Act of 1974, 29 U.S.C. §§ 1132, 1145, and under Section 301 of the Labor Management Relations Act, 29 U.S.C. §

185.  The Court has personal jurisdiction over Defendant because his principal place of business and residence are in Oregon and a substantial part of the events or omissions giving rise to the claim occurred, or property which is the subject of this action are located in Oregon.  Compl. ¶ 6.  Defendant was personally served with the Summons and Complaint in this case on February 14, 2022.  ECF No. 7.  Clerk's Entry of Default was entered on August 10, 2022.  ECF No. 21.

Turning to the substance of the claim, under 29 U.S.C. § 1145:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

Plaintiffs are entitled to being a civil action for an employer's failure to pay. 28 U.S.C. § 1132.  If judgment is entered in favor of the plaintiffs, the "court shall award":

> (A) the unpaid contributions,
>
> (B) interest on the unpaid contributions,
>
> (C) an amount equal to the greater of—
>
>   (i) interest on the unpaid contributions, or
>
>   (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

"An award is mandatory if (1) the employer is delinquent at the time the action is filed; (2) the plan provides for such an award; and (3) the district court enters judgment against the employer." *Gauthier v. Vitro Electric, LLC*, 3:21-cv-00097-JR, 2021 WL 3415190, at *3 (D. Or. July 13, 2021).

Upon an entry of default, the facts in the complaint are taken as true, however, "neither the default not the allegation in the complaint can establish the amount of damages." *Lasheen v. Embassy of the Arab Republic of Egypt*, 625 Fed. App'x 338, 341 (9th Cir. 2015). Accordingly, before the court can enter a default judgment for a sum that is uncertain, a plaintiff must prove damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

In this case, Defendant agreed to be bound by the terms and conditions of the relevant CBA. LeFever Decl. ¶ 7; Ex. 2. ECF No. 17. The CBA requires Defendant to submit reports and pay contributions due to Plaintiffs for work performed under the CBA by covered employees of Defendant in the prior month. LeFever Decl. ¶ 8; Ex. 3. The CBA also obligates Defendant to make his books and records available to Plaintiffs for the purpose of auditing to determine the amount of the employer's liability and to pay the expenses of the audit if any delinquencies are found. *Id.* the CBA imposes interest on unpaid contributions at the rate of 10% of the delinquent contributions from the due date, compounded monthly until paid in full and that such interest charges apply pre- and post-judgment. *Id.* The CBA provides for liquidated damages permitted by Section 502(g)(2)(C) of ERISA if the contributions

are not paid in full by the 15th of the month in which they became due in an amount up to 20% of the unpaid contributions. *Id.* The CBA also provides for the recovery of reasonable attorney fees, costs, and other expenses incurred in collection. *Id.*

After this action was filed, Defendant belated provided Plaintiffs with the records needed for a payroll audit which show that Defendant owes Plaintiff:

1) For unfunded contributions in the amount of $6,003.32 in unfunded contributions for work performed in the period of February 2018 to April 2018 and from July 2018 to December 2018;

2) Interest on the delinquent contributions, pre- and post-judgment, at the rate of 10% simple on:

    a. $166.28 from March 15, 2018 until paid in full;

    b. $66.51 from April 15, 2018 until paid in full;

    c. $33.26 from May 15, 2018 until paid in full;

    d. $1,128.25 from August 15, 2018 until paid in full;

    e. $1,285.85 from September 15, 2018 until paid in full;

    f. $770.84 from October 15, 2018 until paid in full;

    g. $798.12 from November 15, 2018 until paid in full;

    h. $1,097.42 from December 15, 2018 until paid in full;

    i. $656.79 from January 15, 2019 until paid in full;

3) $1,143.79 in liquidated damages;

4) $1,235.00 for the cost of the payroll audit of Defendant; and

5) Plaintiffs' reasonable attorney fees, expenses, and costs totaling $11,123.80. LeFever Decl. ¶ 9, Exs. 4, 5, 6.

The Court concludes that an award of damages is permitted and the requested amount is supported by the record and by Plaintiffs' exhibits.

### I.     *Eitel* Factors

The Court turns to the *Eitel* factors.  First, courts consider the possibility of prejudice to plaintiffs.  "In assessing this factor, courts have considered whether the plaintiffs be without recourse for recovery if the motion for default is not granted." *Gauthier*, 2021 WL 3415190, at *4.  Here, Plaintiffs have no recourse to obtain relief other than by this action.

For the second and third *Eitel* factors, courts consider the merits of the claims and the sufficiency of the complaint.  Upon entry of default, courts take the well-pleaded factual allegations of the complaint as true.  *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.").  Here, Defendant's own records demonstrate that he paid wages without paying the fringe benefits which would result in nine out of the twelve months at issue in 2018.

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp.2d 1172, 1176-77 (C.D. Cal. 2002); *see also Board of Trustees of the Sheet Metal Workers Local 104 Healthcare Plan v. Virgil*, NO. C

07-01508 WHA, 2007 WL 3239281, at *2 (N.D. Cal. Nov. 1, 2007) ("In general, default judgment is disfavored if there were a large sum of money involved.") In this case, the amounts at issue are not relatively large.

For the fifth factor, consider whether a dispute concerning material facts exist. However, "[b]ecause all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists." *Elektra Entm't Grp., Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005). Here, the well-pleaded allegations, taken as true, do not support the existence of a genuine issue of material fact.

The sixth factor relates to excusable neglect but there is no evidence of excusable neglect in the present case.

The seventh and final *Eitel* factor is the policy that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, "this policy standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action." *Joe Hand Promotions, Inc. v. Machuca*, No. 2:13-cv-1228 GEB KJN, 2014 WL 1330749, at *6 (E.D. Cal. Mar. 31, 2014). When a defendant has failed to answer a complaint, it "makes a decision on the merits impractical if not impossible," and Rule 55 allows the court to terminate a case before a hearing on the merits when a defendant fails to defend an action. *PepsiCo*, 238 F. Supp.2d at 1177. Here, a decision on the merits is impossible because Defendant has failed to appear, plead, or defend this action.

This factor is outweighed by the other factors and the Court concludes that default judgment is warranted in this case.

## II.     Attorney Fees and Costs

Plaintiff also seeks an award of attorney fees. Attorney fees are authorized by 29 U.S.C. § 1132(g)(2) and by the relevant CBA. "Work performed by non-attorneys, such as paralegals, are awarded at market rates, of this is 'the prevailing practice in a given community.'" *Guathier*, 2021 WL 3415190, at *6 (quoting *Trustees of Const. Indus. & Laborers Health & Welfare Tr. v. Redland Ins. Co.*, 460 F.3d 1253, 1257 (9th Cir. 2006)).

Generally, attorney's fees are calculated using the lodestar method, i.e., by multiplying the number of hours worked by the reasonable hourly rate. *See Perdue v. Kenny A.*, 559 U.S. 542, 551 (2010) (holding "the lodestar approach" is "the guiding light" when determining reasonable fees). In determining the "reasonable hourly rate to use for attorneys and paralegals," courts look to the "prevailing market rates in the relevant community." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013) (citations and internal quotation marks omitted). This court also excludes hours "that are excessive, redundant, or otherwise unnecessary." *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (internal quotation marks and citation omitted). The party seeking fees bears "the burden of documenting the appropriate hours expended in the litigation, and [is] required to submit evidence in support of those house worked." *United Steelworkers of Am. v. Ret. Income Plan for Hourly-rated Emps. of Asarco, Inc.*, 512 F.3d 555, 565 (9th Cir.

2008) (internal quotation marks and citation omitted). "As a benchmark for comparing an attorney's billing rate with the fee customarily charged in the locality, this Court uses the most recent Oregon State Bar (OSB) Economic Survey." *Precision Seed Cleaners v. Country Mut. Ins. Co.*, 976 F. Supp.2d 1228, 1244 (D. Or. 2013).

Here, Plaintiffs seek to recovery attorney fees in the amount of $10,696.00. This includes fees for 39.9 hours of work by attorney Lance A. LeFever at an hourly rate of $275 and for 1.8 hours of work by associate attorney Chelle B. Haynes at an hourly rate of $160, as well as 3.5 hours of work by legal assistant Tara Rush at an hourly rate of $65. The Court has reviewed the claimed rates against the OSB Economic Survey and, applying the relevant factors, concludes that the claimed rates are reasonable. The claimed hours appear reasonable and non-duplicative. The Court finds no cause to reduce the requested fees. The Court therefore concludes that Plaintiffs are entitled to the full amount of the requested fees.

Finally, Plaintiff seeks an award of $5.80 in expenses for postage and costs in the amount of $402.00 for clerk fees and $20.00 for docket fees under 28 U.S.C. § 1923(a). "Unless a federal statute, these rules or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). "Rule 54(d)(1) creates a presumption in favor of awarding costs to the prevailing party, and a district court has limited discretion to deny fees under the rule." *Goldberg v. Pac. Indem. Co.*, 627 F.3d 752, 758 (9th Cir. 2010). The CBA

also provides for recovery of expenses and court costs. The Court concludes that Plaintiffs are entitled to recover the claimed costs and expenses.

## CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Default Judgment, ECF No. 15, is GRANTED. Plaintiffs are awarded:

1. $6,003.32 for unfunded contributions for unreported work in calendar year 2018; plus

2. Interest on the delinquent contributions, pre- and post-judgment, at the rate of 10% simple on:

    a. $166.28 from March 15, 2018 until paid in full;

    b. $66.51 from April 15, 2018 until paid in full;

    c. $33.26 from May 15, 2018 until paid in full;

    d. $1,128.25 from August 15, 2018 until paid in full;

    e. $1,285.85 from September 15, 2018 until paid in full;

    f. $770.84 from October 15, 2018 until paid in full;

    g. $798.12 from November 15, 2018 until paid in full;

    h. $1,097.42 from December 15, 2018 until paid in full; and

    i. $656.79 from January 15, 2019 until paid in full; plus

3. $1,143.79 in liquidated damages; plus

4. $1,235.00 for the costs of the payroll audit of Defendant.

Plaintiffs' Motion for Attorney Fees and Costs, ECF No. 16, is GRANTED. Plaintiffs are awarded attorney fees in the amount of $10,696.00; expenses in the

amount of $5.80; and taxable costs in the amount of $422.00. The total sum of awarded attorney fees, expenses, and costs is $11,123.80.

Final judgment shall be entered accordingly.

It is so ORDERED and DATED this     24th     day of October 2022.

                                         /s/Ann Aiken
                                         ANN AIKEN
                                         United States District Judge